## * * § 362 INFORMATION SHEET * *

TC Westshore, LLC
**DEBTOR**

FX Luxury Las Vegas I, LLC
**MOVANT**

BK- 16-13277-led

CHAPTER: 11

MOTION #: 1

### Certification of Attempt to Resolve the Matter Without Court Action:

Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.

Date: 07/11/16          Signature: /s/ Ryan J. Works
                                    *Attorney for Movant*

PROPERTY INVOLVED IN THIS MOTION: 3743 S. Las Vegas Blvd., #101, Las Vegas, NV

NOTICE SERVED ON: Debtor(s) ✓ ; Debtor's counsel ✓ ; Trustee ✓ ;

DATE OF SERVICE: 07/11/16

**MOVING PARTY'S CONTENTIONS:**
The EXTENT and PRIORITY of LIENS:
1st  n/a
2nd
3rd
4th
Other:
Total Encumbrances:

APPRAISAL of OPINION as to VALUE:

**DEBTOR'S CONTENTIONS:**
The EXTENT and PRIORITY of LIENS:
1st
2nd
3rd
4th
Other:
Total Encumbrances:

APPRAISAL of OPINION as to VALUE:

**TERMS of MOVANT'S CONTRACT with the DEBTOR(S):**

Amount of Note: n/a
Interest Rate:
Duration:
Payment per Month:
Date of Default:
Amount in Arrears:
Date of Notice of Default:
SPECIAL CIRCUMSTANCES:

SUBMITTED BY: Ryan J. Works, Esq.
              *Attorney for Movant*

**DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT:**

.
.
.
.
.
.
.
.

SPECIAL CIRCUMSTANCES:

SUBMITTED BY:
SIGNATURE:

MCDONALD CARANO WILSON LLP
RYAN J. WORKS, ESQ.
Nevada Bar No. 9224
AMANDA M. PERACH, ESQ.
Nevada Bar No. 12399
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV  89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com
*Attorneys for FX Luxury Las Vegas I, LLC*

*Electronically Filed July 11, 2016*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>TC WESTSHORE, LLC,<br><br>          Debtor. | Case No. 16-13277-led<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR ORDER APPROVING AND COMPELLING PAYMENT OF POST-PETITION RENT AS AN ADMINISTRATIVE EXPENSE CLAIM, OR ALTERNATIVELY COMPELLING THE DEBTOR TO REJECT LEASE AND FOR RELIEF FROM THE AUTOMATIC STAY TO EVICT TENANT**<br><br>*Hearing Date: OST Requested*<br>*Hearing Time: OST Requested* |

Pursuant to 11 U.S.C. §§ 362 & 365(d) and Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.") 4001 and 6006, FX Luxury Las Vegas I, LLC ("FX Luxury"), by and through its counsel of record, McDonald Carano Wilson, LLP, hereby files this *Emergency Motion for Order Approving and Compelling Payment of Post-Petition Rent as an Administrative Expense Claim, or Alternatively Compelling the Debtor to Reject Lease and for Relief from the Automatic Stay to Evict Tenant* (the "Motion").  This Motion is supported by the following Memorandum of Points and Authorities, the Declaration of Paul Rappaport (the "Rappaport Decl.") filed contemporaneously herewith, the Omnibus Declaration of Ryan J.

Works, Esq. (the "Works Decl.") filed contemporaneously herewith, exhibits, papers and pleadings on file and the argument of counsel at the hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   JURISDICTION**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

4. FX Luxury consents to entry of final orders and/or judgments pursuant to Local Bankruptcy Rule 9014.2.

**II.   BACKGROUND**

1. FX Luxury is the owner of a complex known as Metroflag, including a certain shopping center known as the Hawaiian Marketplace on the Las Vegas Strip. Rappaport Decl. at ¶ 4.

2. Hawaiian Marketplace includes a leasehold interest located at 3743 South Las Vegas Boulevard, Suite 101, Las Vegas, Nevada 89109 (the "Premises"). *Id*. at ¶ 5.

3. On or about August 28, 2014, FX Luxury and TC Westshore, LLC (the "Debtor") entered into a written shopping center lease ("Lease") pursuant to which Debtor was to operate a restaurant on the Premises. *See* Lease, attached to the Rappaport Decl. as **Exhibit 1** (hereinafter cited as the "Lease").

4. Pursuant to articles 1, 2, 3, 4, 5, and 10 the Lease, Debtor agreed, among other things, to pay monthly base rent at the initial rate of $120,431.67 and additional monthly charges consisting of Debtor's pro-rata share of common area maintenance charges ("CAMs"), real estate taxes ("RETs"), and utilities (collectively, "Rent"). *Id*. at Arts. 1-5 & 10. After the first sixty (60) months of the Lease term, monthly base rent increased. Debtor also paid a security deposit in the amount of $75,000.00. Rappaport Decl. at ¶ 7.

5. The Lease provided for a Commencement Date of July 12, 2015 and an expiration date of July 31, 2025. *Id*. at ¶ 8.

6.      Currently, monthly base rent is $120,431.67 per month, with additional charges of approximately $7,249.96 per month for CAMs, RETs, and other expenses covered by the Lease. Rappaport Decl. at ¶ 9. This Rent is due on the first of every month. *Id*.

7.      On or about February 23, 2015, Debtor and Rathaus HMP LLC ("Rathaus") executed an Assignment of Lease ("First Assignment") whereby Debtor assigned its obligations under the Lease to Rathaus, and Rathaus agreed to assume such obligations. Rappaport Decl. at ¶ 10.

8.      The First Assignment did not release Debtor from any liability under the Lease whatsoever. *Id*.

9.      Thereafter, on or about December 10, 2015, Debtor and Rathaus executed a First Amendment to and Assignment and Assumption of Lease ("First Amendment and Assignment") whereby Rathaus assigned its obligations under the Lease back to Debtor, and Debtor agreed to assume such obligations.[1] *Id*. at ¶ 11.

10.      Debtor materially breached the Lease by failing to pay Rent, in full, beginning[2] in November of 2015. *Id*. at ¶ 12.

11.      Pursuant to NRS 40.253 and NRS 40.280, on April 12, 2016, Debtor was properly served with a Five-Day Notice to Pay Rent or Quit ("Five Day Notice"). *See* Five Day Notice attached to Rappaport Decl. as **Exhibit 2**. As of that date, Defendants owed $647,902.74 in past-due Rent. *Id*. at ¶ 13.

12.      Since that date, Rent has continued to accrue, and Debtor has made no further payments to FX Luxury, including July 2016 rent, which became past due as of the close of business July 5, 2016. *Id*. at ¶ 14.

---

[1] The Lease, the First Assignment, and the First Amendment and Assignment are collectively referred to hereafter as the "Lease."

[2] Pursuant to Exhibit B to the Lease, the "Construction Exhibit," related to Debtor's improvement of the Premises, when Debtor performed initial work on the Premises totaling a cost of $1.5 million, FX Luxury would provide a tenant allowance of $525,520.00, provided Debtor was not in default under the Lease. On or about August 31, 2015, Debtor authorized FX Luxury to apply the tenant allowance to delinquent Rent until the balance of the tenant allowance was exhausted. At the time the tenant allowance was credited to Debtor, Debtor was delinquent in payment of Rent and in default under the Lease. However, the tenant allowance covered delinquent Rent through only a portion of Rent due in November of 2015.

13. Pursuant to NRS 40.253, on April 19, 2016, FX Luxury filed its Affidavit/Complaint for Summary Eviction against Debtor seeking summary eviction of Debtor from the Premises. This complaint was subsequently amended on June 6, 2016.

14. On April 25, 2016, Debtor filed its Affidavit/Answer in Opposition to Summary Eviction which was later supplemented.

15. Pursuant to NRS 40.253(6), the court conducted a hearing on FX Luxury's request for summary eviction on May 16, 2016, and then continuing on June 7, 2016, and again on June 9, 2016 until completed.

16. On June 13, 2016, the court reached its decision on the Summary Eviction proceeding and entered a minute order, finding:

> …after further review and consideration of the written pleadings, testimony of witnesses and arguments of counsel, as well as all relevant statutory and case law, COURT ORDERS summary eviction of TC Westshore from the leased premises is GRANTED. COURT FURTHER ORDERS the oral motion for stay of summary eviction is DENIED. COURT FINDS the contract in dispute in the instant matter contains no ambiguities and provides that it is fully integrated and Landlord made no representations about nearby tenants or gross sales. As no ambiguity exists, the words of the contract must be taken in their usual and ordinary signification. Accordingly, TC Westshore was required to pay rent without offset, has failed to assert a cognizable legal defense for failing to do so, and may now be evicted. Mr. Silvestri is directed to prepare the order consistent with the Court's determination and narrowly tailored only to be inclusive of the findings necessary to effectuate summary eviction, with opposing counsel being provided a reasonable opportunity for review prior to submission to the Court…

A copy of the minute order is attached to the Works Decl. as **Exhibit 5**.

17. FX Luxury submitted its proposed order granting summary eviction on June 15, 2016; however, despite filing a notice of bankruptcy to indicate to the District Court that the Debtor filed for Chapter 11 relief, such order was recently signed by the Court. To date that order has not been filed due to the automatic stay. A true and accurate copy of that document is attached to the Works Decl. at **Exhibit 6**.

18. The Debtor filed its voluntary petition for bankruptcy relief under chapter 11 of the Bankruptcy Code on June 15, 2016 (the "Petition Date"). [Docket No. 1].

19. Following the Petition Date, the Debtor incurred $62,966.40 in Rent ("Stub Rent" and collectively, with other post-petition rent, the "Post-Petition Rent") for the period of June 16 to June 30. Rappaport Decl. at ¶ 15.

20. On June 16, 2016, FX Luxury transmitted an invoice to the Debtor identifying the total amount due in post-petition rent and requesting payment of the same. *See* Invoice Dated June 16, 2016, attached to the Rappaport Decl. as **Exhibit 3**.

21. To date, no response to the invoice was made, nor was Stub Rent paid. Rappaport Decl. at ¶ 17.

22. Moreover, Post-Petition Rent was not paid for July 2016, which was due July 1, 2016 and late on July 6, 2016 pursuant to the terms of the Lease. *Id*. at ¶ 18.

23. To date, the total amount due and owing by the Debtor is $1,031,554.86. *Id*. at **Exhibit 4**.

24. Of the total amount due and owing, no less than $190,648 is Post-Petition Rent that is now past-due and owing. *Id*. at ¶ 20.

25. Debtor continues to operate the Premises on a daily basis, selling food and drink to customers of the restaurant, all the while refusing to pay rent to the Landlord. *Id*. at ¶ 21.

26. As a result, and as fully set forth below, an order requiring the payment of all past-due Post-Petition Rent is required so that the Debtor immediately cures post-petition defaults. Alternatively, if the Debtor contends that it is unable to pay the Post-Petition Rent, it is respectfully requested that the Court compel rejection of the Lease, and terminate the automatic stay for purposes of allowing FX Luxury to evict the Debtor from the Premises pursuant to the District Court's order.

**III.    ARGUMENT**

    **A.    Pursuant to 11 U.S.C. § 365(d)(3), This Court Should Compel Immediate Payment Of The Delinquent Post-Petition Rent and the Timely Payment of Future Post-Petition Rent.**

        *i.    The Debtor Must Timely Pay All Post-Petition Rent Obligations, As Required Under the Lease.*

FX Luxury is entitled to allowance and immediate payment of its Post-Petition Rent

pursuant to §365(d)(3) of the Bankruptcy Code regardless of whether the Debtor chooses to assume or reject the Lease at a later time. Pursuant to 11 U.S.C. § 365(d)(3), a lessor of nonresidential real property is entitled to an administrative claim for unpaid post-petition rent up to the date that the debtor-in-possession (or trustee) decides to accept or reject the unexpired lease. *See, e.g., In re Cukierman*, 265 F.3d 846, 850 (9th Cir. 2001) ("claims arising under [11 U.S.C.] § 365(d)(3) are entitled to administrative priority. . . ."); *see also In re Furr's Supermarkets, Inc.,* 283 B.R. 60, 70 (B.A.P. 10th Cir. 2002); *see also In re Burival*, 406 B.R. 548, 555 (B.A.P. 8th Cir. 2009) aff'd, 613 F.3d 810 (8th Cir. 2010). In particular, 11 U.S.C. § 365(d)(3) provides, in relevant part:

> The trustee shall *timely* perform all the obligations of the debtor, except those specified in section 365(b)(2), **arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected**, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.

(emphasis added). Payments must be made when they would otherwise be due under the governing lease agreement. 130 Cong. Rec. S8894–95 (daily ed. June 29, 1884) (statement of Sen. Hatch) (noting that section 365(d)(3) was amended to "require[e] the trustee to perform all the obligations of the debtor ... **at the time required in the lease** ... insur[ing] that debtor-tenants pay their rent ... on time....") (emphasis added).

Accordingly, pursuant to section 365(d)(3), after the Petition Date, the Debtor must timely pay all Rent obligations under the Lease as they become due. The Debtor has not moved for an extension for cause, as is required under section 365(d)(3) of the Bankruptcy Code nor could the Debtor even establish that cause exists here. The Debtor simply is refusing to pay for the beneficial use of the Premises and such conduct is not warranted under the Bankruptcy Code. As such, an order compelling payment of all Post-Petition Rent is necessary.

> *ii. Post-Petition Rent Obligations Which Must Be Timely Paid Under Section 365(d)(3) Include Stub Rent.*

Although the Debtor has failed to even respond to FX Luxury's invoice for Stub Rent, it is anticipated that the Debtor will argue that FX Luxury is not entitled to a timely payment of Stub Rent, even though it constitutes a Post-Petition Rent obligation. As is articulated below, though, Stub Rent must be timely paid as an administrative priority expense pursuant to 11 U.S.C. § 365(d)(3).

Although the Ninth Circuit has not squarely addressed this issue, many other jurisdictions have considered whether Stub Rent is entitled to administrative priority status under section 365(d)(3) of the Bankruptcy Code. There is a split in the circuits in deciding whether Stub Rent is entitled to administrative priority status which hinges on the question of when the claim at issue arose. The majority of courts consider claims to "arise" when they accrue, while the remaining courts consider a claim to "arise" when it is due. *Compare CenterPoint Props. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 268 F.3d 205, 211 (3d Cir.2001) *with In re Handy Andy Home Improvement Ctrs.*, 144 F.3d 1125, 1127 (7th Cir.1998). The Ninth Circuit has held, in a related context, in *In re TreeSource Indus.*, "the relevant time to determine whether the obligation is pre or post-petition **is when the obligations accrue** and not necessarily when performance must take place...." *K–4, Inc. v. Midway Engineered Wood Prods.* (*In re TreeSource Indus.*), 363 F.3d 994, 998 (9th Cir. 2004). As such, it would appear that if faced with this question, the Ninth Circuit would find that Stub Rent is entitled to administrative priority status. Moreover, Debtor had the beneficial use of the Premises on all of the days of June following the Petition Date. The Debtor should be required to pay Post-Petition Stub Rent for that period of time, especially because here the Debtor was at all relevant times selling food and drink to its customers, generating income, all-the-while refusing to pay rent.

In *In re Leather Factory Inc.*, a California bankruptcy court considered whether "rent for the period immediately after the petition date until the first post-petition lease payment came due ("stub rent") is a prepetition unsecured claim or an administrative claim." *In re Leather Factory Inc.*, 475 B.R. 710, 711 (Bankr. C.D. Cal. 2012). The court reviewed the circuit court decisions addressing this issue and the legislative history of section 365(d) and concluded that

stub rent is entitled to administrative priority status, as required under section 365(d)(3) of the Bankruptcy Code. *Id*. at 714-15. In particular, the court explained:

> Congress intended to shift the burden from the landlords for the debtor's use of their property. To allow "stub rent" to be considered as a prepetition unsecured claim gives a windfall to the debtor and its administrative creditors at the expense of the landlord, who has no ability at that time to evict because of the automatic stay. I find that the rent for the days after the filing of the petition until the next lease payment is due are an administrative claim under § 365(d)(3) in a prorated amount of a full monthly lease payment, in accord with *TreeSource* and that slight majority of courts following the accrual rule.

*Id*.

Given that the Ninth Circuit has concluded that a claim arises is based on when it accrues, and given that the majority of courts consider stub rent an administrative priority claim which must be immediately paid, this Court should find that Debtor's Stub Rent in the amount of $62,966.40 rent is entitled to administrative priority and must be "timely" paid as required by section 365(d)(3) of the Bankruptcy Code, meaning it is immediately due and payable for all of the post-petition days of June that the Debtor operated out of the Premises rent-free.

Based on the view of the majority of courts and the Ninth Circuit, because the Stub Rent is an obligation that accrued post-petition, it is entitled to be treated as an administrative priority claim and, consequently, to timely payment in accordance with the terms of the governing Lease.

### iii. Post-Petition Rent Obligations Which Must Be Timely Paid Under Section 365(d)(3) Include July Rent.

Finally, there can be no argument that FX Luxury is entitled to the allowance and immediate payment of July Post-Petition Rent in the amount of $127,681.63, which is currently past-due and owing as of July 6, 2016. July Post-Petition Rent was due on July 1, 2016 and as of today has not been paid. *See* Rappaport Decl. at ¶ 14. As set forth above the Court should compel the continued payment of all Post-Petition Rent during this Chapter 11 Case, as it comes due, until the Lease is accepted or rejected, or pursuant to applicable law. At present, the Debtor is required to pay Post-Petition Rent in the amount of no less than $190,648. An order compelling the same to be paid immediately should be entered by the Court in order for this

Chapter 11 Debtor to remain protected by the Bankruptcy Code.

### B. Alternatively, The Debtor Should Be Compelled to Reject This Lease.

Section 365(a) of the Bankruptcy Code permits the trustee to assume or reject an executory contract or unexpired lease to which the debtor is a party. *See* 11 U.S.C. §365(a). While the trustee generally may have up to 120 days after an order for relief has been entered to choose whether to assume or reject an unexpired lease of nonresidential real property, a Debtor may be compelled to assume or reject such before the expiration of that time period. Fed. R. Bankr. P. 6006; 11 U.S.C. §365(d)(4)(A)(i)-(ii). Moreover, the Bankruptcy Code was amended to provide that a trustee is bound by a duty to make post-petition rent payments to the debtor's lessor.[3] *In re Furr's Supermarkets, Inc.*, 283 B.R. 60, 70 (B.A.P. 10th Cir. 2002); 11 U.S.C. §365(d)(3). This amendment highlights the drafters' intent to protect the interests of a lessor -- whom prior to the amendment would be forced to permit the lessee to remain on the premises post-petition, pre-rejection, despite failing to make any post-petition rent payments. *Id*. Although there is "[n]o specific remedy … for violation of this duty…Section 105(a) of the Code provides authorization to the courts to 'issue any order, process, or judgment necessary or appropriate' to carry out the provisions of the Code. This provision allows the court to fashion an appropriate remedy where the Code is silent. *In re Telesphere Commc'ns, Inc.*, 148 B.R. 525, 531-32 (Bankr. N.D. Ill. 1992)

Here, the Debtor is delinquent in making its Post-Petition Rent payments, despite its continuing obligation to do so. Furthermore, it is highly unlikely that the Debtor will cure its existing defaults of $1,031,554.86 in order to assume the Lease given that it has never made a single rent payment to FX Luxury. Moreover, FX Luxury is entitled to heightened "adequate assurances" as a shopping center owner under the Bankruptcy Code, which the Debtor is also unlikely to provide.[4] Permitting the Debtor to remain on the Premises without making Post-

---

[3] While the 365(d)(3) does permit a 60-day extension for performance of post-petition rent payments, the Debtor, in this case, has not requested this extension and has simply failed to perform. Upon information and belief, the Debtor has no intention to perform its obligations under the Lease, and extending its obligations 60 days would simply further the delay tactics employed by the Debtor from the start.

[4] *See* 11 U.S.C. § 365(b)(3) regarding heightened adequate assurances due to "shopping center" owners.

Petition Rent payments negates the very purpose of § 365(d)(3) and creates the potential for a substantial deterioration of the Premises while the Debtor is in bankruptcy. At this point, FX Luxury's interests are no longer adequately protected. Because this Court has the discretion to "'issue any order, process, or judgment necessary or appropriate' to carry out the provisions of the Code", FX Luxury respectfully requests that the Court authorize and compel the rejection of the Lease so that FX Luxury may proceed with its eviction of the Debtor as set forth below.

C. **Upon Rejection of the Lease, FX Luxury Is Entitled to Relief from the Automatic Stay.**

11 U.S.C. § 362(a)(3) "operates as a stay, applicable to all entities, of – any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Under 11 U.S.C. § 362(d)(1): "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— (1) for cause …" "A decision to lift the automatic stay is within the discretion of the bankruptcy court. Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *In re Avila,* 311 B.R. 81, 83 (Bankr. N.D. Cal. 2004) (internal citations omitted).

Here, cause exists for this Court to grant relief from the automatic stay because the Debtor has failed to satisfy its Post-Petition Rent obligations as required under the Bankruptcy Code. Allowing the Debtor to operate rent-free at the Premises is counter to the policy underlying section 365(d)(3) of the Bankruptcy Code. In particular, by allowing the Debtor's delinquency to continue, the burden would be shifted to the landlord, which was never intended by the Code. If not already, the Debtor will soon be administratively insolvent, which will be impossible to overcome in a plan of reorganization to be filed many months down the road. Accordingly, FX Luxury respectfully requests that this Court enter an order finding that FX Luxury is entitled to relief from the automatic stay so that it can return to State Court to pursue the final stages of its eviction of the Debtor from the Premises.

### IV. NOTICE

Pursuant to Fed. R. Bankr. P. 4001(a), copies of this Motion were served on (i) the United States Trustee and (ii) counsel to the Debtor and the Debtor. In addition, notice of the hearing on the Motion will be served on all parties on the Rule 1007(b) list filed by the Debtor in this chapter 11 case.

### V. CONCLUSION

In all, the Debtor should be immediately compelled to make all Post-Petition Rent payments, including payment of its Stub Rent, in accordance with the terms of its Lease. If the Debtor is unwilling and unable to satisfy its Post-Petition Rent obligations, sufficient cause exists for this Court to compel the rejection of the Lease and order relief from the automatic stay in order to allow FX Luxury to evict the Debtor from the Premises.

Dated: July 11, 2016

McDONALD CARANO WILSON LLP

By:  */s/ Ryan J. Works*
RYAN J. WORKS, ESQ.
Nevada Bar No. 9224
2300 W. Sahara Avenue, Suite 1200
Las Vegas, NV  89102
rworks@mcdonaldcarano.com
*Attorneys for FX Luxury Las Vegas I, LLC*